UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 03-CR-10356-MLW

UNITED STATES

VS.

FREDERICK A. SIMONE,
a/k/a FREDDY, a/k/a
THE NEIGHBOR,

VINCENT C. GIOCCHINI,
a/k/a DEE DEE; and

FRANCIS WHITE, a/k/a
THE WHITE-HAIRED GUY

### DEFENDANT, FREDERICK A. SIMONE'S MEMORANDUM AND OPPOSITION TO GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION

Now comes the defendant, Frederick A. Simone, in the above numbered indictment and does move this court for an order denying the government's request for pre-trial detention. The defendant does request that this Court release him pending trial on a reasonable order of pre-trial release.

The defendant has been charged with multi counts alleging racketeering, loan sharking, money laundering and conspiracy with two named co-defendants. The defendant was taken into custody on December 8, 2003 when the state police executed a state issued search warrant seeking any firearms. The warrant was issued out of the Cambridge Superior Court and was predicated upon an affidavit setting forth facts allegedly obtained from confidential informants, federal "sources" and intercepted conversations overheard on state issued wiretap intercept orders with the target devices

KEVIN J. REDDINGTON • ATTORNEY AT LAW • 1342 BELMONT STREET • BROCKTON, MASSACHUSETTS 02301 • (508) 583-4280 / (508) 580-6186

being defendant's cell phone, hard land line phone as well as a "listening device" placed in his home.[1]

The defendant has filed numerous motions in the Middlesex Superior Court raising significant and troubling issues pertaining to intentional failure to disclose the informant status of alleged co-conspirators who are, in all probability, confidential informants referred to in the affidavit (hereafter referred to as the Russolillo affidavits). Copies of the defendant's motion seeking disclosure of the identity of alleged confidential informants under **Franks vs. Delaware** is annexed hereto referred to as "The Franks Motion" is annexed hereto as Exhibit B.

In addition, the defendant has filed a motion pursuant to **Commonwealth vs. Amral, 407 Mass. 511 (1990)** seeking an order disclosing whether two of the alleged informants were, in fact, named "targets" of the investigation. A copy of the Amral hearing motion is annexed hereto as Exhibit C.

In addition to the above, the defendant has filed motions in the Cambridge Superior Court to suppress evidence obtained from the "bug" as well as a motion to suppress evidence obtained from the wiretap warrants (D), (E) and (F) respectively. The defendant's case in the Middlesex Superior Court now stands continued to a further date for hearing on the above described motions.

Subsequent to his release and litigation in the Middlesex Superior Court, the defendant was indicted, by indictment under seal, on or about November 20, 2003 (filed

---

[1] The defendant was arraigned in the District Court and subsequently in the Superior Court. Federal prosecution was commenced with detention request. It was subsequently dismissed and the matter was presented to the state Superior Court. The defendant, after hearing, posted bail and has at all times appeared in Court on a regular basis. He has cooperated with counsel and has been reliable and faithful to his terms of pre-trial release in the Middlesex Superior Court. (The docket entries are annexed hereto as Exhibit A).

KEVIN J. REDDINGTON • ATTORNEY AT LAW • 1342 BELMONT STREET • BROCKTON, MASSACHUSETTS 02301 • (508) 583-4280 / (508) 580-6186

in Court). A warrant was issued for his arrest on November 21, 2003. The defendant was arrested without incident on December 1, 2003 when he was brought before Hon. Maryanne Bowler when the government filed for pre-trial detention. The defendant's case was further continued to December 4, 2003 for arraignment. On December 4, 2003 counsel for the defendant moved for a continuance of the detention hearing until December 15, 2003 or thereafter. The Court has scheduled this matter for a hearing on December 17, 2003 (docket entries and defense motion to continue are annexed hereto as "G."[2]

The government has filed a motion seeking pre-trial detention of defendant, Simone, pursuant to Title 18 U.S.C. §3142(F)(1)(A), crime of violence and §3142(F)(2)(a) risk of flight as well as alleging that he is a danger to the community and poses a risk to the likelihood that he will obstruct justice.

I.  **Standard for Pre-Trial Detention**

It is a requirement of the law before a citizen may be detained by order of the federal court on motion by the government that proof must be presented that satisfies the Court that no combination of conditions will reasonably assure the appearance of the defendant, the safety of any person or the safety of the community. The government must prove the above as well as, in the alternative, that there is a significant risk of flight and that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings.

The burden of proof regarding the issue of flight under 18 U.S.C. §3142(F)(2) is by a preponderance of the evidence. The burden imposed under Title 18 U.S.C.

---

[2] Further pre-trial orders include an order by Hon. Mark Wolf directing the government to respond to judicial inquiry into early release of Court impounded conversations intercepted pursuant to the Court

§3142(F)(1) is higher requiring presentation of evidence by clear and convincing proof. This is because of "the importance of the interests of the defendant which are implicated in a pre-trial detention hearing. S.Rep. No. 225, 98th Cong; 2nd Sess. Reprinted in 1984 U.S. Code Cong. & Admin. News 3182. Thus, clear and convincing evidence is required to establish the facts relied on that no combination of conditions will reasonably assure the safety of any other person or the community. **United States vs. Patriaca, 948 F2 789, 792 (1st Cir. 1991),** the clear and convincing standard is higher than the mere "preponderance of the evidence" standard. This standard of proof requires that evidence presented to the Court support a "high degree of certainty" that no conditions would reasonably assure the safety of any individual or the community. **United States vs. Chimurenga, 760 F2 400 (2nd Cir. 1985).**

The preponderance standard applies to the issue that no reasonable condition would assure Mr. Simone's appearance at trial. **United States vs. Patriaca, 948 F2 789, 792 (1st Cir. 1991), United States vs. Vortis, 785 F.2 327, 328-29 (DC Cir.), cert. den. 479 U.S. 841, 107 S.Ct. 148, 98 L.Ed.2d 89 (1986), United States vs. DiGiacomo, 746 F. Supp. 176 (D. Mass. 1990).**

In considering the issue of flight and dangerousness, the burden is on the government consistent with the above. An absolute guarantee that the accused will not flee or pose a danger is not required. "The safety of the community can be reasonably assured without being absolutely guaranteed." **United States vs. Tortora, 922 F2 880, 884) (1st Cir. 1990).**

---

ordered intercepts. (order of Judge Wolf annexed as "H")

It is apparent that the government cannot demonstrate to the requisite preponderance of the evidence that Mr. Simone poses a risk of flight that cannot be assured by reasonable conditions. He is therefore entitled to be released on bail.

The Bail Reform Act of 1984 requires the release of persons facing trial on the least restrictive conditions that will assure the person's appearance at trial. 18 U.S.C. §3142 (C)(2). This constitutionally compelled requirement is consistent with the principle that all citizens charged with a non-capital offense shall be admitted to bail. **Stack vs. Boyle, 342 US 1 (1951).** The Eighth Amendment to the United States Constitution mandates that excessive bail not be required. Any doubt the Court may have should be resolved in favor of the defendant. **Herzog vs. United States, 75 S.Ct. 349, 351 (1955).** These are solid constitutional principles that still govern the issue of bail. **United States vs. Townsend, 897 F.2d 989, 993-994 (9th Cir. 1990).**

"In our society, liberty is the nor and detention prior to trial or without trial is the carefully limited exception." **United States vs. Salerno, 481 U.S. 739, 747 (1987).**

In United States vs. DiGiacomo, supra, Hon. Mark Wolf noted that;

"(I)n addition, as Judge Robert Keeton has recently observed;

> Congress...(chose) to sue the term "danger" which by its nature is a risk concept. By using this term, Congress did not declare that the community is entitled to assurances of freedom from all harm and a court cannot detain arrestees on mere apprehension of danger of harm. Rather, the court inquiry must focus on whether by conditions of release the community can reasonably be assured of its safety. See United States vs. Orta, 760 F2 887, 892 (8th Cir. 1985) (en banc) (emphasis in the original).

> In our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception."
> United States vs. Salerno, 481 U.S. 739, 747 (1987).

II. **Standards**

In its consideration of whether the government has met its burden seeking detention the Court must consider a number of statutory factors; see 18 U.S.C. §3142(G);

1.) The defendant's personal history and characteristics;

2.) The nature and circumstances of the offenses before the Court;

3.) The strengths and weaknesses of the prosecution's case;

4.) The nature and degree of any danger to the community.

When the Court considers the history and characteristics of the person, the Court should examine the following factors;

A. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings.

B. Whether at the time of the commission of the instant offense the defendant was on probation, parole or on other release pending trial, sentencing, appeal or completion of sentence.

**The nature and circumstances of the offenses before the Court;**

It is important to remember that the instant indictments arise out of conduct occurring more than three years ago. The <u>very same evidence</u> being presented to this court now was initially presented to this Court in 2000[3] when the defendant was charged

---

[3] No. 00-1741-CBS; Detention request before Judge Alexander.
PSR guideline calculations put defendant at BOL-Criminal History II with a guideline of 57-71 months

with the offense of being a felon in possession of a handgun. This offense was not a crime of violence. United States vs. Doe, 960 F2 221 (1st Cir. 1992). The matter was subsequently dismissed and the defendant was indicted in Middlesex Superior Court.

In Middlesex Superior Court the <u>same facts</u> were presented in a request by the government for detention being denied and the defendant posted $10,000 cash bail.[4]

The government has charged the defendant with a number of indictments alleging, inter alia, racketeering, money laundering, extortionate credit transactions and conspiracy. Regardless of the number of charges the fact remains that this is the same case presented in federal and state court in 2000.

What is noticeable is that a review of the evidence shows that Mr. Simone never threatened any person overtly or indirectly. Notwithstanding an intrusive, secretive invasion of privacy to an extensive degree, Simone is revealed as an individual who is concerned about the safety of his friends and loved ones. There is extensive talk about various individuals being "crazy," acting like "HBO" or "Sopranos." <u>No where</u> does the government have direct threats of violence against any person. There is no evidence of extortionate extension of credit motivated by greed, fueled by threats of violence to anyone.

Numerous conversations involve thoughts, musings and reminiscences, many complaints of the rather embarrassing and boorish conduct of individuals threatening people who complained to Simone. At no time does he leave his home and act in any illegal let alone threatening fashion.

---

U.S.S.G. §4A1.1, criminal history U.S.S.G. 4A1.2(E). If the defendant pled guilty he would have 41-51 on a three-point reduction.
[4] Subsequently increased by $10,000 to $20,000 aggregate by agreement of government and defendant after an alleged domestic dispute.

The gun is allegedly found under a heavy bureau that could not be moved by less than, incredibly, 2-3 men. It was tested by ballistics b<u>efore</u> it was tested for fingerprints. On balance, the defendant has a strong case for presentation to a judge or jury.

### III  Personal Characteristics

Mr. Simone is a 50-year-old man who lives in Framingham, Massachusetts. He was born in Boston and has literally lived his entire life in this Commonwealth. He was married to Susan Simone. They are now divorced. She remains most supportive of her husband even after their divorce in 1998.

Mr. Simone has four children, two boys and two girls. His daughter, Kristen, is married to a man who is a sergeant in the United States Marine Corps. They have 2 little girls. Mr. Simone's granddaughters are now 4 and 22 months. A review of the letters written by these family members shows the strong character, love and support extended to his family by Mr. Simone. Kristen has clearly focused on the strong and stable influence her father has had on her life especially when her husband was detailed overseas to Iraq. He was a rock of solace and support to both of them. It is clear that he is totally infatuated with his young grand daughter. His support even included having his daughter live with him when her husband went overseas. A review of Sgt. Justin Smith's letter shows how much support he too derived from Mr. Simone. It speaks eloquently for itself. Mr. Simone's two sons are likewise supportive of their father.

In addition, what is so important for this Court to weigh is the "post-offense conduct" of this man. Since 2000, he has taken up residence with his girlfriend, Pamela Harris-Daley. She is a mother and a respected member of the Massachusetts Trial Bar. Mr. Simone has become a major part not only of her life but also that of her son, Jack. A

review of Attorney Harris-Daley's letter shows the love and affection she has for him. More importantly, others have observed the positive influence and impact Mr. Simone has had on Pam and Jack's life.

Attorney Harris-Daley has also offered as an indication of her confidence and belief in the integrity and reliability of Mr. Simone that she will sign a deed posting her interest in her home to the government to secure a bond guaranteeing the defendant's appearance before this Court. Copies are annexed hereto as Exhibit I.

In addition to his strong family support as well as that of Ms. Harris-Daley and her mother, friends of many years have written to this Court to express their opinion of the integrity and character of Mr. Simone, including Mr. Donato Frattaroli, owner of Arto's Restaurant and chairman of the annual "Taste of the North End Charity" as well as a man of obvious high citizenship and charitable ventures. He stakes his professional reputation on the reliability of Mr. Simone and supports his release.

Mr. Simone has convictions in the past. The Court must examine his record. What must stand out is the reliability as a defendant and respect he has shown to the Courts as regards to his obligation to appear including <u>walking</u> literally into a multi-year sentence for a 1986 conspiracy charge. He did his time and was released. He has no defaults on his criminal record.[5]

In his personal life he has been a supportive husband and father, loving stepfather and grandfather and a man who prizes his friendships. He has attended hockey games

---

[5] As indicated, it is believed that this conviction places him a Criminal History II.

and baseball games, cooks for anyone who would sit and eat with him.[6] He is a man who is trusted by those who know and love him.

The common thread of the letters attached to this proffer is that of the importance of strong, loving relationships. He places his family and loved ones at the top. The strong ties to his children, grandchildren, family, Pam Harris-Daley and her young son Jack is the strongest indicator that flight is just not an option to this man. In fact, past conduct being a strong indicator of future action, Mr. Simone is not a person who is a flight risk. Certainly, reasonable conditions to his release can be imposed by the Court.

## IV.     Dangerousness to the Community

This defendant is not a danger to the community nor is he a danger to any particular individual. He should therefore be released on conditions. As the statute indicated, the judicial officer must employ the standard of clear and convincing evidence that no condition or combination thereof will reasonably assure the safety of the community or (a) person. Title 18 U.S.C. §3142 (F).

The Court must consider the sufficiency of conditions of release and determine whether the conditions will "reasonably assure" the community safety. The Court cannot demand more than an "objectively reasonable assurance of community safety." **United States vs. Tortora, 922 F2 880 (1st Cir. 1993).**

Since his release in 1998, Mr. Simone has not been in contact with the criminal justice system other than the instant matter. His reliability and attention to his court obligations indicate his intention to avoid any obstruction of justice, intimidation by direct or indirect threat or otherwise. More importantly, since 2000 the defendant has

---

[6] A cursory review of the tapes shows Mr. Simone's focused interest on veal cutlets, strong coffee and the pleasures of a good meal.

been making a new life with Attorney Pamela Harris-Daley and her son. He has, by all accounts, walked away from any shadowy associations and certainly there is not a shred of evidence of criminal activity since 2000. Nor has there been any indication of witness threat or intimidation notwithstanding the defendant's knowledge since his arrest three years ago on these very matters.

A word should be said about the government's argument that the defendant is "per se" dangerous due to the "LCN" connections. The defendant notes that this Court must surely consider this evidence. It is true, however, that the defendant's exemplary conduct over the last three years must certainly count heavily in his favor.

It is unlikely that three years after knowing about all of the government's evidence and faithfully attending court, cooperating with counsel and making significant positive changes in his life that the defendant would jeopardize all that he loves and holds dear to try to either flee or act in a criminal manner. As Judge Wolf noted in **United States vs. DeGiacomo, 746 F.Supp. 1176 (D. Mass. 1990)**;

> "It is appropriate for the Court to consider the evidence of ... membership in the mafia as a factor mitigating in favor of detention. See, e.g., **United States vs. Zannino**, 798 F2 544, 547 (1st Cir. 1986), **United States vs. Accetturo**, 783 F2 382, 384-385 (3rd. Cir. 1986), **United States vs. Columbo**, 777 F2 96, 99, 2nd Cir. 1985) membership in the mafia, however, cannot properly be the end of the inquiry with regard to dangerousness or flight."

The Court went on to not that the defendant's leadership role could be considered as well as membership in such a "far flung organization may present issues relevant to flight, nevertheless the Court must consider whether there is a combination of conditions that can protect against danger and assure the person's appearance in Court through Pre-

Trial Services that would protect the interests of the public while balancing the liberty interests of the defendant.

In addition to the present letters of support, copies of letters submitted to this Court in the initial detention request of 2000 are annexed as Exhibit K. A review of these documents shows that Mr. Simone, as he is presently, is a man who has great standing in his community. He gives much in time to his neighbors and family. He is well regarded by many. Mr. & Mrs. Gallagher write that he has been a caring influence in their son's life and even took care of him while away on vacation. Elderly neighbors describe him as a positive addition to their neighborhood. He is always there if needed.

Mr. Tierney and Mrs. Theriault describe many acts of assistance and kindness. Mr. Anthony Virgilio adds his observations as a community activist that Mr. Simone is a positive addition rather than a detriment to the community.

## V.   Conclusion

It is submitted that Mr. Simone is a man who has tried to change his way of life. He has held jobs although he has been subjected to set backs with his lay off. A review of his daughter's letter shows the pride and excitement that he exhibited with his first pay stub noting, "this is for you" and placing it on the refridgerator.

Mr. Steven Regab has represented that Mr. Simone has a job waiting for him that will allow him to make a good wage should he be permitted release upon supervision. Ms. Harris-Daley has indicated her willingness to post her real estate[7] with the appropriate appraisal and title search that will reflect equity in the amount of $175,000 to

---

[7] In addition to Harris-Daley, Mr. Edward Bowers and his wife, Anne, have offered to pledge their home in Hull with $179,000 in equity if deemed necessary.

$200,000. In addition, the Court could also order curfew with electronic monitorinig which would insure that the defendant would be subjected to reasonable supervision.

Frederick A. Simone,
By his attorney

Kevin J. Reddington, Esq.
1342 Belmont Street, Suite 203
Brockton, Massachusetts 02301
(508) 583-4280
BBO #414160