UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

**Criminal Number**
**No. 03-CR-10356-MLW**

UNITED STATES OF AMERICA

VS.

FREDERICK A. SIMONE

**DEFENDANT'S COMBINED OBJECTIONS TO P.S.R. AND
MOTION FOR DOWNWARD DEPARTURE**

Now comes the defendant, Frederick A. Simone, in the above numbered indictments and does respectfully submit the within combined sentencing memorandum and motion for downward departure. The defendant also shall note any objections to the Presentence Report (PSR) that he asserts.

1.) The defendant has no objection to the accuracy of the statement, Part A(1)(Charges and Convictions), A(2)(Date of Defendant's Arrest) and A(3-5). The defendant agrees that he has changed his plea of guilty of Counts 4 and 5 of the indictment noting that upon acceptance of the plea and imposition of sentence the government will dismiss Counts 1-3, 10-26 as well as Count 39 at the time of sentencing.

2.) The defendant agrees that Count 4 charges as you have set forth in ¶6 and agrees that Count 4 in ¶6 as well as Count 5 set forth in ¶7 constitute the two counts to which the defendant has entered a change of plea.

3.) The defendant objects to the probation officer's decision to include charging language in the Pre-Sentence Report as it pertains to Counts 11-13 noting as you are aware that these counts will be dismissed at sentencing and the defendant has at no time admitted any of the allegations nor has any evidence been presented to the Court upon which a decision beyond a reasonable doubt or by a preponderance of the evidence could be made.

4.) The defendant objects to the entire recitation of facts in ¶9 detailing the allegations in Count 11 as not being proven to this Court nor being facts that the Court could make a determination by a preponderance of the evidence for purposes of sentencing. The same objection is made to ¶10 and 11.

1

5.) The defendant agrees that the co-defendants has Vincent Gioacchini and charged as set forth in ¶12.

6.) The defendant objects to the recitation of Offense Conduct as set forth in ¶15 with specific objection to the utilization of Statement of Offenses submitted in connection with co-defendants, Francis White and Vincent Gioacchini. The defendant at no time acknowledged any of the factors set forth in the effort to include relevant offense conduct to this Court and specifically objected to any reference whatsoever at the time of the plea to the defendant's purported involvement in "La Cosa Nostra" (LCN) or any reference to being involved with any "New England LCN Family." In fact, the Court specifically struck all references from the plea at the time of the change of plea.

7.) The defendant objects to any statement of offense conduct suggesting that he conspired with any individual, known or unknown, to "shake down" or extort local book makers or that he aligned himself with any co-defendants or individuals. The defendant, Simone, objects to the statements that Gioacchini was an LCN soldier who was aligned with the LCN and/or conspired with the defendant and Francis White.

8.) The defendant specifically objects to the statement in ¶17 that intercepted conversations revealed a "developing struggle within the New England LCN family" and does not agree and specifically objects to any statements regarding rival factions in East Boston and/or Revere wanting to remove "made members" Simone and Gioacchini and were in any fashion threatened to take over "earners."

9.) The defendant specifically objects to the continued statement of fact regarding the "factional dispute" and all of the statements set forth in ¶18 pertaining to Genovese LCN Family, soldier Adolfo Bruno or any other individual referred to in ¶18. The defendant specifically objects to any statement regarding Guglielmetti traveling to Massachusetts on three separate occasions and objects to the balance of the entire paragraph numbered 18.

10.) The defendant objects to ¶19 in its entirety as well as ¶20-23.

11.) The defendant agrees that the Massachusetts State Police received authority to conduct electronic surveillance on his phones, cellular as well as home and established listening devices in his home.

12.) The defendant objects to the conclusion that an extortion scheme developed over the past two decades which has become one of the more "lucrative sources of illegal income" controlled by organized crime. This clear editorial license and unfounded allegation is not based upon any proof that is presented to this Court and cannot form the basis of this Court's opinion or decision regarding sentencing of this defendant.

13.) Likewise, the defendant objects to the allegations set forth in ¶26 with the exception of the defendant's acknowledgement of responsibility pertaining to the indictments averring extortion of Michael Dezotell and Chris (The Greek) Kotsiopoulos.

14.) The defendant has entered a change of plea to Count 4 of the indictment. The defendant has not admitted or agreed that "proof" demonstrates that Kotsiopoulos "paid organized crime figures" for protection of his gambling business. The defendant acknowledges receipt, per his plea, of money from Kostiopoulos as alleged up through December of 2000 when the defendant was arrested.

15.) The defendant specifically objects to any allegation of physical harm or threats presented to Dezotell or Kotsiopoulos.

16.) The defendant has entered a change of plea to Count 5 agreeing that he extorted money from Michael Dezotell who made payments to the defendant arising out of his bookmaking business. The defendant denies that he ever directly or indirectly physically harmed or threatened harm to Dezotell.

17.) The defendant agrees with the statement pertaining to Victim Impact ¶30, Obstruction of Justice (¶31) and Acceptance of Responsibility wherein the defendant is provided a three level reduction per U.S.S.G. §3E1.1 (a) and (b).

18.) The defendant objects to the Offense Level Computation set forth by the Probation Department in ¶32-35 and specifically objects to the Probation Officer's determination pursuant to §1B1.3A that Simone is accountable for the conduct charged in Counts 11-13 of the indictment which are charges of Interstate Travel in Aid of Racketeering in violation of 18 U.S.C. §1952 as well as the grouping note under U.S.S.G. §2E1.2. Even though Probation is unable to account under U.S.S.G. §3D1.2 for the promotion of gambling activity and extortion extension of credit within a guideline computation and therefore notes that there is no impact on the ultimate sentence decision, the charges being dismissed and evidence not being presented to this Court to allow any determination by beyond a reasonable doubt or by a preponderance of the evidence the charges should not be considered in any event.

19.) The defendant further objects to the specific offense characteristics under ¶37(A) wherein additional two levels are presented due to express or implied threat of death, bodily injury or kidnapping under U.S.S.G. §2B3.2(b)(1).

20.) The defendant objects to the adjustment for role in the offense wherein the Probation Department has determined that under U.S.S.G. §3B1.1(c) that the defendant was a manager or supervisor and the criminal activity involved five or more participants. There is no evidence presented to this Court nor that the defendant entered any change of plea to any indictment or allegation that alleged that the defendant was acting as a manager or supervisor of criminal activity involving five or more participants and therefore the two level increase for 3B1.1(c) should not be applied.

21.) Likewise, the defendant objects to Group 2, Count 5 and the merger of Counts 11-13 (Interstate Travel in Aid of Racketeering)(18 U.S.C. §1952 and §2. The defendant incorporates by reference the preceding paragraph as it relates to this objection.

22.)  The defendant objects to the two-point increase set forth under U.S.S.G. §2B3.2(b)(1) wherein there is an allegation of express or implied threat of death, bodily injury or kidnapping.

23.)  The defendant also objects to ¶44 (Adjustment for Role in the Offense) where there is an allegation that he was a manager or supervisor and incorporates by reference his argument as set forth above to ¶38.

24.)  The defendant objects to the recitation of acts pertaining to criminal convictions set forth in ¶56-58. The defendant does not object to consideration, however, of his BOP sheet for purposes of computing his criminal history. The defendant does specifically object to the allegations forming the basis of these charges that were apparently gleaned from his Department of Corrections file.[1]

25.)  The defendant agrees that he was convicted of accessory before the fact as set forth in ¶59 and agrees that the Court may consider the conviction for purposes of calculating criminal history. The defendant objects to the recitation of facts as relied on by Probation through the decision of United States vs. Anguilo, 897 F.2d 1169 (1st Cir.) and "DOC records." The defendant specifically objects to any reference to his alleged membership of "Patriaca Family of La Cosa Nostra."

26.)  The defendant notes that the criminal activity referred to in ¶60 is an accurate statement as to his conviction for purposes of calculating his criminal history. The defendant notes that his statement of fact in the PSR on this offense in ¶60 begins, The defendant was represented by counsel and contains two paragraphs terminating on page 19 where the defendant was "arrested." The defendant notes that page 20 is blank therefore does not enter any objection or observation on these allegations on this particular criminal charge. The defendant did change his plea as the plea agreement and defendant's statements to this Court at the change of plea colloquy reflected.

27.)  The defendant objects to ¶62 wherein it alleged that the instant offense is committed less than two years following his release from custody on February 3, 1998 on a January 6, 1988 sentence imposed in Essex Superior Court thereby adding two points pursuant to U.S.S.G. §4A1.1(e). The defendant thereby objects to the total criminal history point being 8 but notes that, in any event he would be criminal history 4. The defendant objects to references to other arrests as being matters that were dismissed as accurately set forth by Probation.

28.)  The defendant has reviewed the Offender Characteristics Part C and has no objection to personal or family data set forth in ¶71-102.

29.)  The defendant agrees that at present he has no assets or liabilities and notes that the plea agreement does not contemplate any fine or financial payment. The defendant has signed and cooperated with Probation regarding Probation's release forms to acquire financial information.

---

[1] The defendant, by this objection, certainly does not mean to infer that Probation has done anything other than exercise efficiency and diligence in seeking to document the specific facts of the offenses for purposes of computation of criminal history.

> 30.) The defendant objects to the Guideline Provision Computation and Calculation in ¶107 for the reasons set forth above. The defendant requests (below) for imposition of a concurrent sentence to the term of imprisonment he is presently serving in the state system to achieve a received a reasonable punishment for the instant offense.

The defendant notes that he specifically does not move this Court for downward departures based upon the application of Title 18 U.S.C. §3553 and/or the Advisory Sentencing Guidelines since the defendant has entered into a change of plea pursuant to Fed. Rules of Crim. Proc. 11(C) dated March 15, 2005; a copy of which is attached to the Pre-Sentence Report. The defendant, through counsel, in the plea agreement agrees with the government that the Base Offense Level is 18 with Specific Offense Characteristics. The defendant notes that ¶3(C) of the Plea Agreement states that the parties recognize that Counts 1-3, 6, 10-26 and 39, which will be dismissed, "might be deemed relevant conduct" pursuant to U.S.S.G. §1B1.3 if proven by a preponderance of the evidence at a sentencing hearing. The defendant has taken the position that these offenses cannot be proven by a preponderance of the evidence and therefore should not considered relevant conduct. As a direct result, the government does not seek an evidentiary hearing or offer evidence to prove these charges at sentencing. In accordance with the plea agreement, both parties are requesting this Court to impose a sentence to run concurrent with the sentence imposed in the matter of Commonwealth vs. Frederick A. Simone, No. MICR 2001-00049. A 63-month term of incarceration, payment of mandatory special assessment, mandatory 36-month term of supervised release and a fine based upon information contained in the Pre-Sentence Report.

Based upon the above, the defendant and the government agree that there is no basis for a departure from the sentencing range established and therefore the defendant does not submit, as indicated above, any Motion for Downward Departure.

The defendant has objected to the statement and inclusion of any facts not agreed to by the defendant at the time of his change of plea hearing as direct evidence of guilt or facts to be considered under "Relevant Conduct." The defendant notes that any consideration of these extraneous facts or factors as set forth above to which the defendant has objected constitute a violation of his Sixth Amendment right to a jury trial as set forth in <u>Jones vs. United States</u>, 119 S.Ct. 1215 (1999), <u>Apprendi vs. New Jersey</u>, 530 U.S. 466 (2000), <u>Blakely vs. Washington</u>, 542 U.S. 124 S.Ct. 2531 (2004).

As the Court is aware, in <u>Apprendi</u>, the Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond a prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. Subsequent to <u>Apprendi,</u> the <u>Blakely</u> Court defined "statutory maximum" for <u>Apprendi</u> purposes as "the maximum sentence a judge may impose solely on the basis of facts reflected in a jury verdict or <u>admitted by the defendant</u>. 124 S.Ct. at 2537. A defendant had a legal right and was entitled to that sentence. <u>Id.</u> at 2540.

As the Court is aware, the Supreme Court in <u>United States vs. Booker</u>, 125 S.Ct. at 748-50 held that the <u>Apprendi</u> and <u>Blakely</u> holdings are re-affirmed and any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts or established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. The provision of the Federal Sentencing Statute that makes guidelines mandatory under 18 U.S.C.

6

§3553(b)(1) has been severed and excised by <u>Booker</u> as was 18 U.S.C. §3742(e) (Appellate Review Section pertaining to guidelines' mandatory nature). The Court noted that so modified the Federal Sentencing Act makes the guidelines effectively advisory. The Court should consult this sentencing scheme to consider guideline ranges but must also consider factors set forth in U.S.C. §3553(a)(4) and permits the Court to tailor a sentence in light of other statutory concerns as well. See §3553(a).

The Courts must now consider all the factors set forth in 18 U.S.C. §3553(a) and not just the guidelines and policy statements. <u>United States vs. Crosby</u>, 2005 WL 240916 at 7, 397 F.3d 103 (2nd Cir. Feb. 2, 2005). See also <u>United States vs. Hughes,</u> #03-4172 at 9 (4th Cir. March 16, 2005).

Sentencing as imposed by the Court must fulfill the following directive;

A.) A reflection of the seriousness of the offense, promotion of respect for the law and provide a just punishment for the offense.

B.) To provide an adequate deterrent to criminal conduct.

C.) To protect the public from further crimes.

D.) To provide the defendant with educational, vocational training, medical care and correctional treatment.

Under 18 U.S.C. §3553(a)(2) the Court may also consider the "3553(a)" factors to the extent that they are applicable which include;

A.) The nature and circumstances of the offense as well as a history and characteristics of the defendant;

B.) Purposes of sentencing;

C.) The kinds of sentences available;

7

    D.)    The advisory guidelines;

    E.)    Any pertinent policy statement in the guidelines manual including departures;

    F.)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

    G.)    The need to provide restitution to any victims of the offense.

The defendant notes that pursuant to his 11(C) Plea Agreement he does not seek any downward departures nor does he seek to argue §3553(a) factors which may justify either a downward departure or a lesser sentence. The defendant notes that a sentence based on guidelines alone without considering other §3553(a) factors constitutes a mandatory guideline sentence which is violative of the Sixth Amendment as well as the Booker remedial interpretation of the Sentencing Statute. Giving the guidelines presumptive and final weight accomplishes the same result and is also violative. See e.g., United States vs. Biheiri,   F.Supp.2d.   (2005) (WL 350585, E.D. Va. Feb. 9, 2005), United States vs. Huerta-Rodriguez,   F.Supp.2d. (2005) (WL 319640, D. Nev. Feb. 1, 2005).

As it relates to the Probation inclusion of "Relevant Conduct" factors, the defendant incorporates his objections herein and notes that some judges have required sentencing factors to be charged and proven beyond a reasonable doubt. One Court found the Relevant Facts, calculated the guideline range and considered it along with the other §3553(a) factors. United States vs. Huerta-Rodriguez, supra. The other court

found facts beyond a reasonable doubt and applied the guidelines as being mandatory. United States vs. Barkley, 04-CR-119 (ND Oklahoma-Jan. 24, 2005).

The defendant argues that a judge must find facts beyond a reasonable doubt. United States vs. Gray, No. 03-00182 (Slip opinion) (So. Dist. Of West. Va. March 17, 2005). The Court will use preponderance standard then apply reasonable doubt standard to inform how much deference to a court the advisory guidelines range. It is clear that fact finding now requires a much higher standard of proof and rules of evidence should be the preferred course of conduct. See United States vs. Mueffleman,   F.Supp.2d., 2004 (WL 1672320)(D.July 26, 2004). See also Watts vs. United States, 519 U.S. 148 (1997), United States vs. Gigante, 94 F.3d 53 (2nd Cir. 1996), United States vs. Lombard, 72 F.3d. 170 (1st Cir. 1995)(affirmed after remand 102 F.3d. 1)(1st Cir. 1996).

As the Court noted in United States vs. Antonakopolos,   F.3d.   2005 (WL 407365 at 4)(1st. Cir. Feb. 22, 2005), a "Booker error" is defined as "that the defendant's guideline sentence was imposed under a mandatory system. The error is not that a judge (by a preponderance of the evidence) determined facts under the guidelines which increased the sentence beyond that authorized by the jury verdict or an admission by the defendant, the error is only that the judge did so in the mandatory guideline system." There is error "whenever the district court treated the guidelines as mandatory at the time of sentencing." The Court did note that there is no Booker error in a statutory mandatory minimum sentence based on facts found by a jury or admitted by the defendant. In the event the Court applies guidelines mandatorily rather than in an advisory §3553(a) framework there would be a Booker error.

The defendant specifically reserves any issue that may arise under the sentencing in this case under the Booker progeny should the Court exceed the 11(C) plea while noting that pursuant to Rule 11(C) the plea would be rejected and the parties would then seek an alternative disposition as set forth in the plea agreement.  The defendant notes United States vs. Sahlin,     F.3rd     (2005)(WL 407407, 1st Cir., Feb. 22, 2005) held that the stipulation of an upward departure on a plea agreement constituted a waiver of Booker error.  The defendant specifically reserves any argument that may apply in this case notwithstanding the plea agreement language where the defendant has agreed to forfeit, for purposes of the 11 (C) plea, Motion for Downward Departure and/or argument of the §3553(a) factors pursuant to his effort to obtain sentencing in accordance with the plea agreement of 63 months.

It is clear that the "mere entry of a guilty plea is not a waiver of defendant's challenges to a sentencing" United States vs. Sahlin, supra citing United States vs. Cordeiro, 42 F.3d. 697 (1st Cir. 1994).

In accordance with the plea agreement, the defendant and the government request that the Court sentence the defendant to reflect that state sentence imposed on the defendant in the Middlesex Superior Court case that arose out of the same set of facts that are presented to this Court at the change of plea.  The defendant notes that under U.S.S.G. 5g1.3 a judge may adjust the sentence to be imposed so that it reflects time served or to be served where the current state sentence is already running.  The defendant does request that the Court would credit the defendant with time that he has already served from the date of his sentencing in Middlesex Superior Court by Judge Grabau on March 15, 2005 in accordance with U.S.S.G. §5g1.3.  See United States vs. Pray, 373

F.3d 353 (3d. Cir. 2004)(where defendant served four months state time for a drug offense and later convicted on related federal drug offense. The Court was warranted to depart downward on a federal sentence to credit the defendant with state time which was completed and therefore not "undischarged" in accordance with U.S.S.G. §5g1.3). Although the district court could not "credit" the defendant in his federal case with the time he had already served in the state court, the Court, in accordance with U.S.S.G. §5g1.3 could accomplish the same result through a departure. The defendant requests that this Court consider such a departure and anticipates that the government would agree with the defendant to insure that his sentence is concurrent and not in excess of his state time that he has already commenced serving. Please note that this request should not constitute a Motion for a Downward Departure in violation of the plea agreement as the defendant seeks only to accomplish the goal which the plea agreement encompasses.

As further authority for this request, see United States vs. White, 354 F.3d 841 (9th Cir. 2004)(defendant spent ten months in state custody until his trial for attempted murder and was acquitted then prosecuted in federal court for felon in possession and was sentenced. Sentence was remanded to district court to determine whether to depart where the district court believed that only the BOP could give defendant credit for ten months already served because of the departure authorized under U.S.S.G. 5g1.3. App. n.7). See also Ruggiano vs. Reish, 307 F.3d 121 (3rd Cir. 2002)(district court has authority under U.S.S.G. 5g1.3 to adjust the federal sentence for time served). Accord United States vs. Sanchez-Rodriguez, 161 F.3d 556 (9th Cir. 1998) (en banc) (Held district court acted within its discretion when it departed downward in an illegal re-entry case by three levels from 77 to 30 because of delay bringing the federal charge), United States vs. Gonsalez,

192 F.3d 350 (2nd Cir. 1999)(although federal court may not order a federal sentence begin when defendant was arrested by the state for the same conduct underlying the federal offense because the BOP determines credit, the federal judge may accomplish the same however by departing downward in a federal sentence).

In <u>United States vs. Otto</u>, 176 F3d 416 (8th Cir. 1999), the same issues were discussed. In <u>United States vs. O'Hagan</u>, 139 F.3d. 641 (8th Cir. 1998) the Court noted that a district judge has authority under §5k2.0 to make a downward departure from guidelines to take into account an expired state term of imprisonment that was based on conduct that was "inextricably intertwined" with the federal offense because the commission did not adequately consider the issue. Apparently, §5g1.3 addresses only credit for a "undischarged" term of imprisonment. See <u>United States vs. Blackwell</u>, 49 F.3d 1232 (7th Cir. 1995)(authorizing downward departure to achieve the effect of concurrency with a fully discharged sentence).

In <u>United States vs. Keifer,</u> 20 F.3d 874 (8th Cir. 1994) the Court was held in an ACC case to be prevented from granting a downward departure below a 15 year minimum to insure that a defendant got credit for time served in state where the gun in the ACC case was used as the underlying state crime. Time was held to run concurrent from the date of the arrest for the state charge. <u>United States vs. Drake</u>, 49 F.3d. 1438 (9th Cir. 1995)(where state robbery had been fully taken into account in determining the offense level for the federal firearms offense the Court was required to reduce the defendant's mandatory minimum sentence for time served in state prison. The Court could impose guideline provision 5g.1.3(b) to reduce the sentence in order not to frustrate the concurrent sentencing provisions mandated by statute.). See also <u>United States vs.</u>

Rosado, 254 F.Supp.2d 316 (7th Cir. SDNY 2003)(defendant convicted of distributing heroin and where defendant served 7 months in state custody on a conviction that was relevant conduct in the federal sentence the defendant was granted a 7 month downward departure to account for the state time already served.)

To avoid any difficulties with the BOP and to insure the intent of the plea agreement the defendant therefore requests that the Court would consider factoring in the time that he has served in the state system on these charges. The defendant requests that this Court order and/or recommend that the defendant's sentence in the state correctional facility should run concurrently with his federal prison sentence. The defendant notes that upon sentencing this Court, in accordance with the plea agreement and pursuant to the request of counsel for the defendant and the government would direct that the sentence be concurrent with the state sentence already being served. The Court has authority to impose and the BOP has the authority to implement such a sentence. United States vs. Fuentes, 107 F.3d 1515 (1997), Romandine vs. United States, 206 F.3d. 731 (2nd Cir. 1998), Tanner vs. Sawyer, 284 F.3d. 1143 (9th Cir. 2000), United States vs. Pungitore, 910 F.2d. 1084 (3rd Cir. 1990).

The defendant therefore requests that the Court would impose the sentence concurrent with the state sentence being served with credit for time served.

The defendant, in support of the request that this Court sentence him in accordance with the Plea Agreement to 63 months incarceration concurrent with the sentence he is presently serving in the state system for the incidents arising out of the same set of facts that are before this Court for sentencing, offers the following additional observations;

First, this case commenced in the federal court and was initially dismissed. The defendant was then indicted on the state charges in the state court and subsequently charged again in the federal court. The facts are inextricably interwoven and the Court should consider that as a sentencing factor.

Further, as the defendant has objected to relevant conduct being considered, the Court, in an effort to treat co-defendants in an equal fashion, should note that Francis White did not receive any consideration of relevant conduct and Francis White, in fact, had his conduct limited to his own conduct. Further, the defendant has not pled nor does the government seek to prosecute him on any theory of racketeering offenses but only on travel act/extortion violation and the court, as an additional factor, should not consider conduct as it would in a usual racketeering case where a defendant has entered a plea and the defendant acknowledges participation in some type of criminal organization.

As this Court has pointedly observed based upon a review of the evidence presented in this Court it appears that any criminal activity that the defendant was involved in was broken down and certainly not arising out of any type of criminal organization or organized activity. It appears that the defendant and Gioacchini associated together, if not out of concern for activities that appear to be something from the cable "Sopranos" show, at least the defendant in an effort to quell any of this untoward and threatening conduct.

The defendant further notes that as part and parcel of the negotiated plea agreement in the joint request of both parties that this Court impose the sentence as set forth in the plea agreement the defendant raised serious and significant legal issues that indicate a taint in the electronic surveillance that infects that entire case and the

legitimacy of the law enforcement activities resulting in the indictments. The defendant notes that further description is not appropriate for this filing and requests that the Court consider this factor as well in the ultimate resolution of this case.

                Respectfully Submitted,

                /s/ Kevin J. Reddington
                On Behalf of Frederick A. Simone